# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Linda Marston, | ) |
|     Plaintiff, | ) |
| v. | ) No. 16 CV 50143 |
| | ) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) |
| Commissioner of Social Security,[1] | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

After working many years as an administrative assistant in the healthcare field, plaintiff Linda Marston was diagnosed in August 2007 with non-Hodgkin's mantle cell lymphoma. She underwent seven months of full-dose chemotherapy, and then returned to work in the summer of 2008. R. 540. But the cancer returned soon thereafter, and she stopped working and applied for disability benefits, which were quickly granted based on her meeting a listing. In December 2008, she had a stem cell transplant to further treat the cancer. This treatment apparently worked because, since that time, the cancer has been in full remission.

In the summer of 2012, the Social Security Administration conducted a continuing disability review and found that plaintiff was no longer disabled as of July 1, 2012. Plaintiff was almost 60 years old at this time. There was no dispute that she no longer met the listing requirements for cancer, but a new question emerged as to whether she could separately qualify as disabled based on other ailments, including hearing loss, back pain, gastrointestinal issues, fatigue, a cognitive impairment, and a hand tremor. Her doctors speculated that some of these problems may have been caused or exacerbated by the cancer treatments (a "chemo brain theory"

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

1

as plaintiff described it), but there has not been any clear determination regarding this assertion. The other possibility is that these conditions were simply arising coincidentally over this general period. There was a family history of tremors, for example. Over the next three years, plaintiff was treated by various doctors and seen by Agency consultative examiners.

This information was reviewed by the administrative law judge ("ALJ") who also held a hearing on June 24, 2015. Plaintiff testified that she could not work in her old job as an administrative assistant because of her multiple impairments. She testified that she had memory and concentration problems. She previously was an avid reader but did not read much anymore because she could not remember what she read. She had a tremor, mostly in her right dominant hand. The tremor started when she was in the hospital for the stem cell transplant. It affected her in various ways. She used a battery-operated toothbrush because she could not hold a regular one steady enough. The tremor affected her writing, and made it difficult to make jewelry and do crafting, two hobbies she liked to do. If she took a cup of coffee from the kitchen to the living room, she would spill it all the way there due to hand shaking. She could only type a half hour to perhaps an hour. She had balance issues due to right leg weakness. The hearing problems began in 2004, before the cancer, and mostly affected the right ear. She had some gastrointestinal problems and reflux issues for which she took medication.

On October 22, 2015, the ALJ issued a written decision finding plaintiff not disabled. The ALJ found that plaintiff should be limited to sedentary work to account for her problems with fatigue and balance. As for the hand tremor, the ALJ agreed that it was a documented impairment. To account for it, in the residual functional capacity "RFC" evaluation, the ALJ limited plaintiff to doing only *frequent* fine fingering (up to two-thirds of the work day) with her right hand. This was an accommodation because it was less than *constant* fine fingering. The

ALJ rejected plaintiff's assertion that she could, at best, do only *occasional* fine fingering (up to one-third of the work day), a limitation which if accepted would have precluded all relevant work according to the vocational expert. The ALJ found that the cognitive problem did not qualify as an impairment because it had no "discernible effect" on plaintiff's ability to work. R. 45. As a result, no RFC limitation was included for this impairment.

Plaintiff argues that a remand is required because the ALJ's failed to adequately consider her cognitive impairment and hand tremor and that the ALJ played doctor in interpreting the evidence. Plaintiff also argues that the ALJ wrongly rejected an opinion of her treating neurologist (Dr. Wallery) and, in so doing, failed to follow the treating physician rule. Plaintiff finally argues that the Appeals Council erred in failing to consider a new doctor's opinion.

The Court begins with the hand tremor because it is the impairment that the ALJ identified as the "most obvious." R. 53. This Court agrees that it is plaintiff's best argument for a remand. Although it is a close question, this Court finds that a remand is warranted.[2]

This is a narrow issue. The ALJ agreed that the tremor was a documented impairment and one that validly would require *some* RFC limitation (frequent but not constant fingering). Thus, the precise issue is the frequency or durability of plaintiff's fingering abilities over a full work day. Although the ALJ's decision is 16 pages, this question received only a brief analysis, as discussed below. It is true that the decision contains a long narrative section summarizing plaintiff's doctor visits with treating and consulting doctors and psychologists, and that this section contains references to the hand tremor. Doctors performed tests to diagnose the tremor, used varying medical terminology to describe it, speculated about possible causes, and finally

---

[2] In reviewing the ALJ's decision, this Court asks whether there was substantial evidence to support the decision. U.S.C. § 405(g). Moreover, even when adequate record evidence supports the decision, the Court will not affirm if the ALJ did not build an accurate and logical bridge from that evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

3

recommended various medications. But for the most part, these facts are not relevant here given that, as noted above, the ALJ did not question the diagnosis of a hand tremor.

In considering the ALJ's analysis, the Court notes there is no medical opinion directly addressing this issue of frequency. The ALJ did not call a medical expert at the administrative hearing. The State Agency physicians did not comment on the tremor issue in their written assessments. *See* Exs. 8F, 12F.[3] There was some evidence *indirectly* supporting the ALJ's conclusion about frequency. Specifically, Dr. Ramchandani, a consulting physician, examined plaintiff on one occasion and observed that plaintiff was "able to make a fist, pick up objects, open and close the door, oppose the thumb to fingers, and flip pages." R. 308. However, aside from recording these observations, Dr. Ramchandani did not provide a broader diagnosis or explanation and did not opine on the frequency with which plaintiff could perform these tasks. Could plaintiff flip pages and pick up objects repetitively for a good portion of the work day? Could she type and do other fine fingering tasks for a sustained period?

The ALJ specifically analyzed the hand tremor issue in two places. The first was the following passage:

> To accommodate limitations performing fine manipulative activities due to tremor, the claimant is limited to frequent, but not constant, fine fingering using the right dominant extremity. She is not further limited, however, as she admitted that she is able to do most activities of daily living; she has reported to her oncologist that the tremor has lessened in intensity and the symptoms are tolerable.

R. 54. The second place was later in the decision where the ALJ analyzed the weight given to the expert opinions. There, the ALJ rejected Dr. Wallery's opinion, which stated in pertinent part that plaintiff's tremor was "interfering with her ability to perform activities of daily living including tasks such as writing, eating, typing." R. 399. Here is the ALJ's reasoning:

---

[3] These reports were made in 2012.

> As noted above, and in the claimant's own testimony, she retains the ability to function independently. She can use a keyboard, crochet, feed herself, perform household tasks, care for plants and flowers, and manage her personal care and hygiene[.]

R. 55. Taken together, these two passages articulate two rationales—one being plaintiff's ability to do activities of daily living and the other being the report to her oncologist. In this Court's view, these rationales are not sufficient to meet the substantial evidence standard on this issue.

As for report to the oncologist, this seems to be a reference to a yearly checkup with Dr. King and Dr. Longo in November 2014. In their notes, these doctors noted that plaintiff stated that she had an essential tremor, that her other doctors had prescribed Primidone but it caused "some fatigue and mental fogging although she did have slight improvement" in the tremor, that the tremor was "tolerable," and that (more broadly) the past year had been the "best year since [her cancer] diagnosis" because her "energy has been improved" and because she had "been able to do her activities of daily living without any difficulty." R. 799. Although this evidence supports the ALJ's conclusion (and may be validly considered on remand), standing alone it is equivocal in several respects. For one thing, this evidence does not include any medical analysis. Plaintiff's oncologists did not offer any assessment of, or perform any diagnostic tests relating to, the hand tremor. They seemed to be focused on the cancer. (They are oncologists after all.) More significantly, plaintiff's statements about her condition are at a high level of generality. There are no details about her specific activities, and the terms used are vague. For example, her statement that the hand tremor was "tolerable" could be viewed in several ways, one being that plaintiff was stoically dealing with this particular limitation, which she may have viewed as relatively unimportant when compared to potentially life-threatening cancer. In other words, even though plaintiff's statements support the ALJ's view and paint a rosier picture of plaintiff's condition

5

than other contemporaneous reports, they ultimately do not speak to the precise issue here because they do not contain any details about the nature and frequency of her daily activities.

Given that this first rationale is basically focused on plaintiff's daily activities, it essentially collapses into the second rationale, which explicitly focuses on this issue. The ALJ relied heavily on plaintiff's daily activities, mentioning them repeatedly throughout the opinion. *See* R. 46, 47, 48, 53, 54, 55. But the problem with this argument is two-fold. First, the Seventh Circuit has stated that ALJs should be careful about placing too much weight on the ability to do daily activities. Specifically, unlike with work activities, a claimant often can perform household activities under a more flexible standard and, moreover, these activities are typically judged by a lower standard of performance. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. (the "failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Hamilton v. Colvin*, 525 Fed. Appx. 433, 438 (7th Cir. 2013) ("We have admonished ALJs to appreciate that, unlike full-time work, the 'activities of daily living' can be flexibly scheduled").

Second, the ALJ failed to acknowledge those portions of plaintiff's statements that conflicted with the ALJ's conclusions. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (the ALJ "ignored [claimant's] numerous qualifications regarding her daily activities"). In the same reports relied on by the ALJ, plaintiff indicated that, although she could still do various activities, she could only do so for limited time periods. For example, on the Adult Function Report, plaintiff stated that fatigue was a "big issue" and that she was able to do tasks only "for small amounts of time" and did things "in stages." R. 198; *see also* R. 199 (describing typical day: "Dress, eat breakfast, small amounts of activity through out the day with intervals of rest"); R. 200 ("I do all these [activities] in limited amounts"); R. 202 ("short time periods"). As for

6

crocheting, an activity the ALJ mentioned specifically several times and one that seems more relevant than others to the issue of fine fingering, the ALJ did not acknowledge plaintiff's explanation at the hearing. She stated the following about this and other activities:

> Well, I—there really isn't anything I can't do. It's the limitation of it and how well I do it when I do do it. I can type. It's the fine things that I have difficulty doing, like writing. I used to have gorgeous penmanship; not so much anymore. I used to paint. I really can't do that much anymore because it shakes too much and, like I said, I used to make jewelry. I can still crochet because you don't have to be quite as specific with that but basically those are the things that it affects. Sometimes, I have to use my left hand to do some things which is very uncoordinated[.]

R. 19-20. The Government points to this first statement ("there really isn't anything I can't do") as supporting the ALJ's rationale, but ignores the qualifications in the rest of the passage. The problem, again, is that there was no consideration of the frequency issue that is critical to this case.[4] In sum, this Court finds that a remand is required based on this issue.[5]

Having found that a remand is warranted based on this first argument, the court will address the remaining two arguments more briefly. As for the ALJ's decision that plaintiff's cognitive problems were not a medical impairment, plaintiff raises similar arguments about the failure to consider all the evidence, doctor playing, and the failure to adequately consider the medical opinions. Here again, this is a close call, but for this impairment, the ALJ cited to more medical evidence. Specifically, the ALJ referred to "comprehensive neurological examinations" with "two different specialists" that "revealed normal recall attention and fund of knowledge" and to Dr. Langgut's report stating that plaintiff's memory was intact and her immediate recall was "excellent." R. 45. It is true, as plaintiff argues, that plaintiff mentioned memory problems to

---

[4] The same criticism is applicable to Dr. Wallery's opinion, which is vague on this critical question as well. He merely stated that plaintiff's hand tremor would "interfere" with her ability to write, type, and eat.

[5] Other courts have remanded based on this same argument. *See, e.g., Stewart v. Berryhill*, 2017 WL 770161, *11 (S.D. Ill. Feb. 28, 2017) ("The ALJ obviously accepted that Mr. Stewart had some degree of limitation in using his upper extremities, but he failed to explain why he found him capable of frequent, rather than occasional, handling, fine fingering, pushing/pulling and operating hand controls. This was error. [] The difference between frequent and occasional use of the arms and hand is *potentially dispositive* in this case.") (emphasis added).

her doctors and that they were monitoring this issue, but the ALJ concluded, on balance, that the above-cited evidence was more convincing. If this were the sole argument, this Court would not find that a remand is warranted. However, given that this case will be remanded, the ALJ should reconsider this issue to ensure that this issue has been fully addressed.

Finally, plaintiff argues for Sentence Six remand based on new evidence submitted to the Appeals Council, five months after the ALJ's decision. The evidence is a letter, dated March 23, 2016, from Dr. Edwards, an oncologist who "recently assumed the care" of plaintiff. The letter states, in pertinent part, that plaintiff's tremor "significantly interferers with her ability to perform frequent fine fingering activities, especially for prolonged (>3-4 Hours/day) periods of time" and that her memory impairment from chemotherapy "significantly limit[s] her ability to understand, remember, and complete tasks with detailed instructions." Dkt. #7-1. In their briefs, the parties debate whether this evidence is new and material. Plaintiff argues that this evidence is relevant because it confirms that a second treating source. The Government argues that the Appeals Council correctly found that this evidence not relevant to the time period at issue, especially given that Dr. Edwards included a caveat in his letter that he was not plaintiff's treating physician during the relevant period and that plaintiff's treating physicians during that time would be better qualified to offer an opinion. The Court is more persuaded by the Government's arguments. But these arguments reveal a larger issue that neither the ALJ nor the parties addressed consistently or fully. This is the issue of timing. Like many disability adjudications, this one was spread over a multi-year period during which plaintiff's symptoms may have been worsening or, perhaps, as the Government and the ALJ suggest, improving. The initial determination was in 2012, various opinions were offered in 2014, and the hearing was in 2015. Now there is a new opinion in 2016. In her decision, the ALJ did not make a clear

distinction between these time periods, and relied on later reports made well after 2012, which raises a question of whether Dr. Edwards' opinion could be considered relevant based on a theory of a backward-looking inference.  This argument should be considered on remand, and the ALJ should consider the dates of the various reports, especially the reports of daily activities that were made three years apart. The ALJ should also explicitly apply the treating physician rule (including the checklist of factors).   This Court really should not have to order this anymore. The ALJs must follow the Administration's regulations.  If the Administration does not like its own regulations, then it should change them, not ignore them.

    For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date:  July 12, 2017                    By:  _____
                                                      Iain D. Johnston
                                                      United States Magistrate Judge